CHARLES CAMPBELL,

*vs.*

ALBERT J. JOHNSTON, BENJAMIN F. TAYLOR AND STUART WALTON.

*Sussex, Sept. T. 1866.*

It is not competent to prove as an exhibit at the hearing a lost instrument not produced.

No paper can be proved as an exhibit that requires more than the proof of the execution or of hand writing to substantiate it.

The production of a document in the possession of the adverse party cannot be compelled under a *subpoena duces tecum.*

The statute authorizing the examination of the adverse party as a witness was not meant to subvert the long settled practice requiring a cross bill in such cases, and to substitute for it the summary process of a *subpoena duces tecum.*

The absence of the United States Internal Revenue stamp from the assignment of a judgment does not affect the validity of the judgment, or of an execution issued upon such judgment, and affords no ground for restraining its collection from the defendant in the judgment.

INJUNCTION BILL.—This was a bill in equity to restrain the collection of two judgments, both of which had been marked to the use of other parties by the original plaintiffs. No question of law was involved in the merits of the cause. At the hearing, the solicitor for the defendants called upon the solicitors for the complainant to produce the originals of two contracts for the sale of lands by one of the defendants to the complainant, having given notice to produce them at the hearing. It was proposed, if the originals were not produced, to examine the complainant as to their contents. The service of notice to one of the complainant's solicitors was duly proved.

*W. Saulsbury and Moore,* for the complainant, denied that either they or the complainant had any knowledge of the existence of one of the papers; and, as to the

other, objected *first*, that it had no relevancy to the case, and, *secondly*, that it was not competent for the defendant to take oral testimony at the hearing as to the existence, loss, custody and contents of the paper. The only proper course was by cross-bill for discovery. 2 *Dan. Ch. Pr. pp.* 1035, 1037 *note* 1., *and* 1038 ; 1 *Gr. on Ev.* § 361.

*Layton*, for the defendants, insisted that the existence of both papers had been shewn under the commissions, and that it was not necessary to file a bill for discovery because the matter did not concern title, and that the application was within the scope of the Ninth Rule of Court. The cases cited for the complainants had been overruled by the Statute of this State. 11 *Del. Laws* 686, *Act of February* 18, 1859, which authorizes the examination of a party "in any suit or judicial proceedings." 1 *Gres. Eq. Ev.* § 360 ; *Roscoe's Civil Ev.* 64 ; 2 *Madd. Ch. Pr.* 427.

THE CHANCELLOR :—

Under the English practice the proof of exhibits *viva voce* was made before the Registrar out of Court and without the liberty of cross examination. Hence such proof was admitted in few cases. It is the rule that "no " exhibit can be thus proved that requires more than the " proof of the execution or of hand writing to substantiate " it ; if it be anything that admits of cross examination or " that requires any evidence besides that of handwriting " it cannot be received." 2 *Daniell's Ch. Prac.* 1026 *(878 of last Ed'n.)* ; *Gresley* 126.

Under this rule the handwriting of an attesting witness alleged to be dead cannot be proved *viva voce* ; for besides handwriting the death of the witnesses must be proved ; nor can a will be proved as an exhibit ; for the sanity of the testator is a question open. The only qualification of this rule which restricts the proof of exhibits to handwriting or to the examination of an attesting

witness is that the custody and identity of an ancient document and the accuracy of an office copy may be proved *viva voce.* Under our practice the exhibit is proved at the bar of the Court and the proof is subject to cross examination. The reason for the English practice therefore might be considered as not applying here ; but with us the same rule is required by another consideration equally cogent. This is that the evidence taken upon the proof of an exhibit does not appear of record and the decision of the Court in admitting or rejecting the paper offered as an exhibit cannot be reviewed upon an appeal. If admitted, the paper is indorsed as proved and so goes with the record. If excluded, the fact that it was offered and rejected does not appear. Thus the decision of this Court upon the proof of exhibits becomes conclusive. For this reason, if there were no other, this mode of proof should be confined to the simplest cases, to those which are supposed to admit of no controversy and not to warrant the expense of taking the testimony under a commission. . And such is the meaning and object of the Ninth Rule of Court. Under its terms parties are allowed at the hearing, " to make and prove exhibits of deeds, " receipts and other instruments of writing by the instru- "mentary witnesses or proof of handwriting ;" also books of accounts by the oath of the party &c. There is the less reason for any larger liberty in the proof of exhibits, because it is always open to a party to prove any paper under a commission, which both affords full opportunity for cross-examination and spreads the evidence upon the record, so as to be reviewed upon appeal. In the present case the offer is to prove as an exhibit a lost instrument not produced. Such proof may take a wide range. It must embrace at least evidence as to the existence of the paper, its execution, its loss and its contents. Such a course of examination ought not to be admitted under a commission. I may add that even in the ordinary case of an exhibit if serious controversy arise as to the proof, it

would seem to be the proper course for the Court to direct interrogatories to be filed and that the cause stand over. The defendant is not allowed to make the proof.

*Layton,* for the defendant afterwards offered to call the complainant as a witness under a *subpoena duces tecum* to produce and prove the contracts. He claimed the power to do so under the statute of February 18th, 1859, authorizing a party to examine the adverse party as a witness. 11 *Del. Laws,* 686.

The solicitors for the complainant objected.

THE CHANCELLOR :—

The defendants' counsel proposes to call the complainant to the bar and swear him for a twofold object : First, to compel him to produce a paper supposed to be in his possession. Second, having compelled the production of the paper, then to prove by the complainant its execution. It is an attempt to employ the *subpoena duces tecum* instead of a cross-bill to enforce the production of a document by the adverse party. This is not within either the terms or policy of the statute of 1859. That statute enables either party to examine his adversary as a witness in any Court, the examination to be according to the course of practice of the Court in which it is made. This would be in chancery by calling the witness before a commissioner to answer interrogatories filed, or to the bar of the Court in order to prove an exhibit produced. With the matter *of the production of documents by a party in the cause* this statute does not deal ; nor was it intended to supersede the existing modes sufficiently provided in both Courts. The right of one party to compel a production of documents held by the other party is a right, not of course, but subject to be contested, depending upon considerations to be inquired of and decided by the Court before an order for production will be made. It is to afford opportunity for such preliminary inquiry that in equity a

cross-bill and answer are required ; at law an affidavit shewing a proper case and a rule to shew cause are necessary. In this respect a party in the cause stands in a position different from that of a mere witness not a party. It is not to be supposed that a statute which merely authorizes the examination of a party as a witness was meant to subvert the long settled course of chancery practice as to cross bills and to substitute for it the summary process of a *subpoena duces tecum.* If the defendant held the document he might produce it and call the complainant to prove it as an exhibit ; but he cannot be allowed,not having the paper,to call the complainant and in this way compel the production of it.

An objection of a preliminary nature was taken, by the bill, to the right of the defendant Johnston to collect these judgments, on the ground that no United States Revenue stamps appeared upon the assignments.

In the course of the opinion on the merits, referring to this objection,

THE CHANCELLOR said :—

Whether such stamps are essential, under the Act of Congress,to the validity of the assignments, or, if they are so,then whether they can be supplied at the hearing of the cause,are questions I have not deemed it necessary to consider. The absence of stamps, even if they are required by the Act of Congress to be affixed to such assignments,cannot affect the validity of the executions issued upon these judgments, but only concerns the validity of the assignments. The whole effect of the absence of such stamps, if they are requisite at all, is that the proceeds of the executions when collected belong to the original plaintiffs in the judgment, *i. e.,* Taylor in one and N. H. Johnson in the other, and do not pass according to the uses indorsed on the record. In other words, the executions may be valid, even though the assignments (so called) are wholly

void. In this proceeding it is only the validity of the judgments and executions which can be properly called in question. If the judgments have not been paid by the complainant some one must have a right to collect them, either the original plaintiff or those for whose use they were marked ; and whether one or the other it matters not to the complainant. He is bound to pay the money under the executions and leave the question of its application to be determined between the parties interested in that question.